Turney, J.,
delivered the opinion of. the Court.
In January, 1867, McCarger, a cotton speculator, exhibited to complainant a letter of credit from R. Patterson & Co., of Philadelphia, authorizing him to draw on them for amounts approximating the value of cotton purchased by him, bills of lading for the cotton to accompany the drafts, or to be delivered to R. Patterson at or before acceptance.
The bank, a corporation in Memphis, agreed to advance him money to pay for cotton to be shipped by him, he to refund to the bank by drawing bills of exchange on R. Patterson & Co., the bills of lading to accompany bills of exchange.
On the 17th of January McCarger began to draw money from complainant, and on the 26th had drawn *403 one hundred and eighty-nine thousand, two hundred and seventy-four dollars and seventy-five cents ($189,274.75). He purchased 1,235 bales of cotton. On the 18th, 22d, 23d, and 26th, and before all the invoices, had been delivered by the merchants, he took from Falls & Co., agents of the Baltimore and Ohio Railroad freight line, bills of lading for 1,217 bales, consigned to R. Patterson & Co., Philadelphia.
The cotton was at Memphis.
The bills of lading provide.“The Baltimore and Ohio Railroad hereby agree, upon arrival at Cincinnati, Ohio, and delivery of the freight described in the above bills of lading, as therein consigned, they will receive and forward said freight to destination/'’ etc.
Duplicates, so marked, of these bills of lading, except two of the 26th, were forwarded to R. Patterson & Co. The originals were delivered to the bank, the complainant, as additional security for the money drawn.
As a part of the bills of lading, and immediately preceding the undertaking of the Baltimore & Ohio Railroad, is an unsigned blank bill of lading to be perfected by the authorized agent- of a “good steamboat bound for Cincinnati, Ohio.”
On the faith of the transfer and delivery of the originals of the bills of lading, and the bills drawn on Patterson & Co., the Merchants National Bank advanced to MeCarger, on drafts on Patterson & Co., and on accounts, the amount before .mentioned, viz.: •$189,274.75.
*404 -Three of the bills of exchange on Patterson & Co., amounting to one hundred and sixteen thousand dollars ($116,000), were, one on the 19th and two on. the 23d of January, forwarded for presentation for acceptance.
After all were forwarded, and on the evening of the 23d, complainant received a telegram from its cor-respondent that the first bill had gone to protest for non-acceptance.
On the evening of the 28th another telegram was received that the second and third bills had gone to protest.
After an interview with McCarger on the 28th, an officer of the bank separated from him to meet him next morning. Much more passed between the parties which we deem unnecessary to the correctness of a decision.
On the morning of the 29th an officer of the complainant called at the office of McCarger, who was gone, leaving the following letter:
“Memphis, Jan. 28, 1867.
“G-. Falls, Esq.: As I am in doubts about Patterson, I will go on this evening, and know what he will do at once, and send you dispatch, and also to Mr. Cherry, at the very earliest moment. It will not answer to delay, as the debt is a large one for Mr. Cherry to carry.
“ In regard to acceptance I mentioned, please explain to Mr. Cherry. It shall be attended to without delay, and if he does not accept balance, you *405 have the cottop here, and the money can bp realized ■out of it. Truly yours, A. McCarger.”
Upon learning of the non-acceptance, the bank telegraphed to its correspondent to hold the bills of exchange subject to i.t$ order, and on the 29th filed its bill charging that McCarger had left the State, and was about to remove the' cotton, and attaching the ■cotton together with 18 bales not in the bills of lading.
About the time, or perhaps before the filing of the bill, but of which complainants knew nothing until after the bill was filed, its correspondent presented the bills of exchange a second time, and they were accepted. They were payable at sixty and thirty days after sight, acceptance dated of the day of first -presentation.
Subsequently the German National Bank and' the Commercial Bank filed bills attaching the same, cotton, then in the hands of a receiver at the instance of the Merchants National Bank, and seeking to avoid its attachment upon the ground that the suit as to the three bills of exchange presented and accepted, and as to the fourth for thirty-nine thousand dollars (|39,000), and which, by agreement, had never been forwarded, was premature. That the liability of McCarger was dependent upon the non-acceptance or nonpayment by Patterson & Co.
The foregoing is a sufficient statement of the facts in the view we take of the case, after adding that during the progress of the suit, the Merchants Na *406 tional Bank, by agreement with them, substituted itself to the liability of Patterson & Co. on the three acceptances, and looked to the cotton for indemnity.
The conditions expressed in the letter of credit of' Patterson & Co., by which they agreed to accept drafts by him, were never performed. The bills of lading were never in fact obtained, except from ’ Cincinnati to Philadelphia. There is nothing in the-record showing either an authority or an effort on the part of Falls & Co. to provide for the shipment of the cotton from Memphis, and its delivery to the Baltimore and Ohio Railroad in Cincinnati, until which, no liability attached to that company through its bills-of lading.
From the fact that the bill of lading of the railroad company is on the same paper with and immediately after one prepared for the river line connecting Memphis and Cincinnati, it is inferable, and in the absence of proof to the contrary, we must presume it a condition precedent to the liability of the-company, that the consignor was to have perfected arrangements- for the shipment to Cincinnati; especially when it is expressly provided that the risk of the railroad company only commenced upon the delivery to .it of the freight at the latter place.
It follows, therefore, that Patterson & Co. were under no moral or legal obligation to accept bills of' exchange upon the faith of the bills of lading ex--hibited in this record, and a mistaken interpretation, of their letter of credit, or of the extent of the bills-of lading, can not have the effect of defeating the- *407 first attaching creditors in the attempt to collect its debt of McCarger.
In any event, there was a liability resting upon McCarger, and although the deduction in the bill may perhaps make that liability secondary and contingent,, its facts make it primary and absolute.
Under any construction of the contract between the-complainants and McCarger, the non-acceptance of Patterson & Co. made his, McCarger’s, liability primary with immediate right of action, which, having accrued,, could not be defeated by the subsequent action of Patterson & Co. in accepting the bills of exchange;: the only effect this could have would be to give to the Merchants Bank an election to proceed against McCarger, or look to the proceeds of the bills.
A knowledge of such non-acceptance on the part of the complainant was sufficient — a formal and legal notice was not necessary.
There was nothing requiring the bank to wait till a second attempt to procure acceptance had been made,, and there is nothing in the letters of Patterson authorizing it to hope for such acceptance.
Advancing money upon the faith of the bills of exchange under the facts, was to advance it upon the credit of McCarger, indulged upon the probability of acceptance by- Patterson & Co., which failing, the entire liability returned to McCarger, who, having left the State, and being about to remove his property,, an attachment might be and was resorted to.
Section 3450 of the Code only intends that an attachment shall not issue for a debt not due, when *408 the Only cause 1iaid for the attachment is the non-residence.
If any one of the other causes for attachment exist, it may be had as well against the estate of the non-resident as of the resident.
Affirm' the decree.